Good morning. I'm Christopher Stender. I'm here on behalf of the petitioners, Satpal Singh Chawla et al., and I'd like to reserve two minutes of my time for rebuttal. Just watch the clock, counsel. Yes, Your Honor. This is an immigration case where the immigration judge violated the due process of the petitioner through his insertion of his own personal bias and conjecture into the record. Furthermore, the I.J. failed to ensure that an adequate record was made for the case. If the case turns on an adverse credibility finding based on a defective and inadequate record, this case should be remanded back to the immigration judge for a de novo hearing. Addressing the bias, the government recently filed a 28-J letter arguing that the — Now, on the bias issue, was the bias issue exhausted? Was that raised? That's what the government argued in their 28-J letter. Was it raised? Well, yes. And where and pinpoint it, please. Okay. The argument there is that the credibility finding and the bias collapse into one. Was it specifically argued as a bias claim? No, it was not. Was it cited, too? Were there examples in the record made? No, there are not. However, the bias bleeds into the credibility finding. So just by raising credibility, that exhausts the bias argument. Is that the argument? That's the argument. Is there any authority for that proposition? As far as the specific case, we have not cited any specific case. However, the case does turn on the adverse credibility finding of the judge. The judge is biased. You better use your time wisely. That's the only thing I'm going to say. Thank you, Your Honor. Thank you, Your Honor. What's wrong with the IJ's credibility finding? Right. That's the second issue that we argued. It is not supported by substantial evidence. And it does, that goes into also our third argument regarding the record that was made by the immigration judge. Yeah, stick with one issue at a time. Stick with the second one right now. The petitioner submitted basically evidence in support of the fact that he did participate in a rally where he was arrested by the police. There's two divergent accounts. There's one that was submitted initially where there is no mention of any arrest of the petitioner or of anybody at the rally. There's a second letter that is submitted later on. Newspaper article. Newspaper article, exactly. The petitioner at the time contemporaneously explains that he believes that there is some bias in the first article because who wrote the article. And he explains that. And the judge refuses to accept that and requests additional evidence. The petitioner provides the additional evidence where there's a second article that cites that the petitioner himself is arrested and that other Sikhs are arrested at the same time. The judge chooses not to recognize that and finds that it's completely impossible. What the judge seems to say is, listen, you've got conflicting stuff here and it's your burden and I don't think you've met the burden. Why did you put this first article in there that doesn't support your testimony? And why doesn't it read out that way? You simply haven't satisfied your burden of proof because there are too many inconsistent things. Well, the first article proves, in fact, that the rally did take place, that there were Sikhs there, there was a protest against the helmet law. But if you look at it in terms of proof, it seems to disprove the idea that there was any problem with your client. It made to some degree there was some conflict there, but yet it was explained contemporaneously by the petitioner. He said, he told the judge, I think there is some bias regarding the newspaper account, and he did provide at the request of the Court a more specific inquiry. Newspaper accounts, of course, even in this country, are written for different readerships in different geographic areas with different political points of view. That's exactly what happened here. So we should discount both of them then? Well, if they were both discounted, then half of the judge's credibility finding then collapses, and that's the point that petitioner would like to make. The judge and the Board of Immigration Appeals, which adopted the immigration judge's opinion, relies almost exclusively on the fact of these two newspaper articles that are supposedly divergent. And they seize upon that as the reason for the incredibility finding of the petitioner. And it's really built on a foundation of sand. It's really — and this is where the bias, which was our first argument, kind of bleeds into it, where the petitioner explains why he believes the articles differ, and the judge just chooses not to accept that. The BIA faults the petitioner for not explaining it contemporaneously when the record, in fact, supports that he did at the time say that there was some bias and look at it. When, in our brief, we went into some detail describing that the first article is written in New Delhi, where the Sikhs are a minority population, and certainly the newspaper article is not written with their viewpoint in mind, rather the government's viewpoint. Where the second article comes from the Punjab, which is a Sikh-majority area, where there's more detail regarding the egregious conduct of the government during the rally and the arrests and the beatings that took place. Nobody's ever argued that it was a fabricated article. It was accepted, and they're just saying that, well, this makes your testimony somewhat implausible, and I choose not to believe it. That's what the immigration judge's and the BIA's main findings were. The second point of the incredibility finding on the evidence was the fact of a letter regarding a dismissal at work. While this case was up on appeal, prior counsel submitted a motion to remand and reopen. In that, they added additional evidence explaining the fact that this hotel chain is now out of business. So he could not obtain a better letter regarding the dismissal because it's not available any longer. It ended in March because his arrest resulted in an unexcused absence from work, and his manager was biased. But then he comes in with this termination of employment letter that talks about something else. And the BIA says he wasn't able to, what's that all about? Well, I think what's interesting about this is the immigration judge specifically says, hey, I want you to bring in a letter. And this is what creates this problem for the petitioner. He explained in his testimony why he felt he was dismissed. The immigration judge asked for some corroboration. The respondent was not able to obtain the actual, the suspension letter. Rather, he got a different letter regarding a termination, and the immigration judge then seizes upon that and says, well, I'm going to find all your testimony incredible for those two reasons. The immigration judge did agree on several points that I think are important. He agreed that the petitioner was a Sikh, that he was active in the Sikh community, that he did participate in a rally on March 15, 1998, and that rally was specifically against the helmet law, which the petitioner argued was discriminatory based on religious grounds against Sikhs. Where was this rally? What city was it held in? New Delhi. New Delhi. In the capital. As we point out, Sikhs make up about 10 percent or less of the population in New Delhi. And again, that's where the first article was presented on. Does Exhibit 17 suggest that the police in New Delhi agreed not to apply the helmet law against women in January 98, which was before the rally? There is some conflict there whether it would be applied against Sikh women or not. But again, looking at the source of the newspaper coming out of New Delhi, again, I think that would lead to some argument whether or not there was some bias in that newspaper account also. You make a nice argument for the proposition that you're trying to advance. The problem is that the standard of review is very deferential. You know, I mean, the case has to compel all reasonable fact finders to really go in your direction. And I'm not sure that it compels it. Why does it compel a conclusion if you have to keep explaining all these problems? Well, I think what's compelling about it is the record itself. And what's compelling is the petitioner cannot really get adequate review before this court, before the BIA, because the record was so poor. The record is replete with examples of inaudibles, things that could not be translated. You're going back to stuff that may have been unexhausted. Well, I think that since those arguments were advanced originally, the credibility claim was advanced for the original appeal. The credibility is based upon the record that was made. Let's assume we agree with you. What are you asking us to do? The petitioner is asking that the case be remanded for a de novo hearing. So that an adequate record of the hearing. What if we don't go that far and we just remand it? Should we remand it so that the BIA can deal with whether or not this protest of helmet laws qualifies as one of the reasons why asylum can be granted? And the I.J. said, wait a minute, this is all about helmet laws. I'm not sure this falls within a protected ground. BIA didn't touch that. So shouldn't we remand it at least, if we agree with you, to have the BIA cope with that part? Yes. And that would be, you know, another, I mean, not as fully of what the petitioner would be asking for, but that also would be an option. That would at least give the petitioner a forum in order to answer these issues. The I.J. did query whether or not this was a protected ground. And the I.J., excuse me, the BIA never really answers that. So I think it would be beneficial if the Board would be able to take another look at it and also give the petitioner a forum to make his arguments before the Board of Immigration Appeals and complete the record. I see I have 23 seconds left, so I'll reserve that. Thank you, Counsel. We'll hear from the Governor. May it please the Court, William Minnick representing the Respondent. The immigration judge's adverse credibility determination was supported by the record and the Board acted within its discretion in denying petitioners' motion to reopen to raise due process claims because those claims should have been raised on direct appeal and in any event, petitioner did not demonstrate prejudice. I will address the issues in the order in which they appear in petitioner's paper. Well, there were a lot of, there were some discrepancies, but these discrepancies are really pretty minuscule and I'm troubled by some of the speculation that the I.J. entered into here. Yes, Your Honor. The basis of the adverse credibility determination as affirmed by the Board were three things. One, the conflicting testimony on the rally, the Helmut Law rally, that is Exhibit 4G versus Exhibit 13. Two, the conflict in all the evidence regarding how his employment ended. And then three, the Board found that given all the discrepancies in the evidence, he should have provided some corroboration evidence with regard to the bus explosion. On the first point, is there really a, are they, are two accounts really inconsistent? I think they are, Your Honor, with regard to how the rally ended, which is really the only, the only thing that goes to the plaintiff's claim. Well, the one just doesn't say anything about the end and the other one has a little more detail. Why does that make them inconsistent? I mean, the one is quite, the Exhibit 13 record at 645 is very detailed that there is a conflict, but the Exhibit 4G record at 805 simply says the police agreed to listen to their concerns and the rally ended, period. That doesn't mean that there couldn't have been, you know, beatings or whatever as the rally ended. Well, I mean, that might be, reasonable minds might be able to differ on that point. The Board, the fact finder in this case, determined that there was a conflict. And again, I would like to invite the Court to consider that when Petitioner was asked to reconcile these two accounts, what he said was Exhibit 4G, the article that said the rally ended without violence, was simply a lie, record at 421. He said it three times, that's a lie, that's a lie, that's a lie, which is significant because he's the proponent of this evidence. In the first article, the 4C? 4G, Your Honor. 4G. There's no affirmative statement there. There's nothing said one way or another about beatings or arrests or anything of that nature. Well, I do have to concede that, Your Honor. It does not – the article does not specifically say there were no arrests. I agree with you, Your Honor. But again, the Board, as the fact finder, found that there was a conflict. The Board found it significant that when asked to reconcile the proponent of these articles – But that finding has to be supported by substantial evidence, correct? Pardon me, Your Honor? That finding has to be supported by substantial evidence. Well, yes, it does, Your Honor, but it also – As I understand what the Board did here is they adopted – they only adopted the I.J.'s decision with respect to the adverse credibility decision, and then they went on to comment about it. I agree, Your Honor. Elaborate on it. So we look to what's in the record before the I.J. Yes, sir. And the I.J.'s decision and their decision together to really understand what happened here. Yes, sir. You know, I think I agree with Judge Pias. All it says is the protest was finished after this. It doesn't say that there weren't any problems at all. And then the I.J. says, look, you know, you've got to go out and see if you can get something. You say there is something. So then he brings back something, and the I.J. says, well, this is baloney. I mean, it seems that he's damned if he does – he's damned if he doesn't. The I.J. seems to be just waiting for him under these circumstances, and nothing the guy says can cut any ice. And I don't see why it's – you know, if the I.J. says, well, this first one suggests there wasn't any trouble, and he says, well, that's a lie. Here's the second one. Your Honor, I guess I would respond to that by also asking – or rather inviting the Court to look at Record at 473. Record at 473 is when there's an issue with regard to the translation of Exhibit 4G, which is the rally that – the article that said the rally did not end arrests. The article was handed to the translator, and the translator translated the last sentence of the article as saying that police specifically said they would not enforce the helmet law and the rally ended. So again, Petitioner is the proponent of these documents. He's giving them to the Court. He says one of his documents that he submitted is a lie, Record of 421, and undeniably has a certified translator, identified Record of 473. All these go to defects in his documentation, and the fact that there is conflict in the evidence, I mean, it doesn't compel the conclusion that he's credible. I'd like to address the second adverse credibility basis that the Board highlighted, and that is the conflict in all the evidence regarding how his employment was terminated. Is that what his claim is about for asylum? Yes, Your Honor. I mean, his claim was based on three things, that he was arrested after the helmet rally, that he was suspended from his job after the helmet rally, and that he was arrested after the bus explosion. So him being suspended or terminated or whatever happened was one of the basis of his claims. He did claim it occurred in part because he was a Sikh. All right. And what he testified to, and I guess I should note that this finding was unchallenged in Petitioner's brief, but what Petitioner testified to during the hearing was that he was suspended from his job after the rally in March of 1998, and that he received a suspension letter on that date. The immigration judge indicated that he would like to see the suspension letter, so the record at 647, which is a termination letter dated June 7th, 1999, which the Board and the immigration judge found conflicted with his testimony that he was suspended and received a suspension letter in March of 1998, a record of 412. Both his tests, or rather this letter, Exhibit 12, the termination order, also conflicts with his testimony that he was never actually terminated, record of 413. The Board also noted that Exhibit 12 is also poorly formatted and drafted, suggesting that it is not genuine. And that finding by the Board was unchallenged in Petitioner's brief. And finally, the Board noted that both his testimony that he was suspended in March of 1998 and Exhibit 12, the termination letter that says he was terminated in 1999, both of those pieces of evidence conflict with Exhibit 5, and that is an affidavit that Petitioner submitted from his neighbor. It's on the record at page 796. And that affidavit from the neighbor says that Petitioner simply quit his job. And again, so there's conflicting evidence. Again, you can ---- But I thought the heart of his claim had to do with the fact that he was by the New Delhi police. They arrested him and beat him, and they were after him because he was a Sikh. Isn't that why he was claiming asylum? I mean, that was the major part of his claim, Your Honor. He did also claim that he was fired from his job because he was ---- But that wasn't the basis for his asylum claim, was it? I believe it was, Your Honor. I have his application here, and he tells a story. I mean, that's part of his story about what happened to him, but that doesn't seem to be the basis for his claim for asylum, is that he was afraid of the police, that he would get beaten. He was beaten and arrested and jailed for, on the one occasion, was it for a week? That's correct, Your Honor. And I agree with you that the major part ---- And then the bus incident where he's driving the bus and the canister goes off. Yes, sir. And they essentially accuse him of having ---- he alleges that they accused him of having created the situation. Yes, sir. And I agree with you. I mean, the major part of his claim is that he was arrested by the police on these two incidents, but he did also testify in support of his claim that he was fired from his job because he was a Sikh and his general manager told him that he would not take him back unless he cut his hair. So I would submit that it was a part of his asylum claim. And he did submit all this conflicting evidence in support of that claim. I'd submit that under the circumstance, the evidence in this case simply doesn't compel the conclusion that he was credible. Unless the Court has questions about the due process issues, the immigration judge bias, the transcription error, the issue of exhaustion, I'll simply ask those. No questions, Counsel. Thank you, Your Honor. Thank you. Mr. Stender, you have a little bit of time. I just wanted to point out briefly that this is a pre-real ID Act asylum application, so the petitioner was not required to provide corroboration of his claim. Now, the immigration judge, as the Court has pointed out, did request corroboration. And in response to that, the petitioner did attempt to corroborate his testimony and put in those documents. And that's where, as the Court has noted, the immigration judge seemed to be waiting for some conflict and then seizing upon that and then trying to discredit the petitioner based on that corroboration. Where did this Exhibit 17 come that says Sikh men are already exempt from the law dated 97? Offhand, I don't know. I'd have to review who placed that in the record, Your Honor. I don't know. Thank you, Counsel. Thank you. The case just argued will be submitted for decision, and the Court will adjourn.
judges: O'scannlain, Trott, Paez